Filed 12/18/25  P. v. Hornsby CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and<br>    Respondent,<br><br>    v.<br><br>COREY ALLEN HORNSBY,<br><br>    Defendant and<br>    Appellant. | B336873<br><br>(Los Angeles County<br>Super. Ct. No. SA108978) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lana S. Kim, Judge.  Affirmed.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Heidi Salerno, Deputy Attorney General, for Plaintiff and Respondent.

_____

Corey Allen Hornsby appeals from a judgment of conviction entered after a jury found him guilty of second degree robbery, possession of a stun gun, and resisting a peace officer. Hornsby contends the trial court made several errors in instructing the jury, including failing to instruct on theft as a lesser included offense of robbery and incorrectly instructing on the elements of possession of a stun gun and resisting a peace officer. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Evidence at Trial*

On the afternoon of October 11, 2023 Kyaw Thein was working in a sunglasses store in Santa Monica. He was alone in the store when Hornsby entered and took "three to four sunglasses in a row" and "put them in the pocket of his backpack." Thein thought this was unusual because most customers picked up one pair of sunglasses, tried them on, and then put them down to pick up another. Because Hornsby was acting suspiciously, Thein moved from his position at the register toward the door. Hornsby tried on a pair of sunglasses and then, rather than going to the cash register, Hornsby "slowly walked to the exit." Hornsby tried to leave the store, but Thein locked the door. Hornsby pushed Thein, and they struggled while Thein tried to prevent Hornsby from leaving. At some point Hornsby "maybe" hit Thein in the face. After about a minute Thein let Hornsby unlock the door and leave. Thein was in "total shock" and afraid that Hornsby might have a weapon and harm him.

2

Hornsby left the store with four pairs of designer sunglasses, two of which were worth approximately $300 each.

Sean Morris was walking on the sidewalk outside the sunglasses store on the afternoon of October 11 when he heard "a loud thud against the glass" of the store. Morris saw Hornsby "actively trying to get past what looked to be the store worker, who was trying to block him from leaving. And it very quickly became a physical kind of brawl." Thein tried to hold Hornsby from behind, and Hornsby "pushed [Thein] back and choked him a little bit to try and leave." Morris heard Thein yell for someone to call the police. At one point it appeared Thein was able to lock the door because Morris saw the gate coming down, but Hornsby "threw off" Thein and unlocked the door. Hornsby "slipped through and casually walked away." Morris watched the altercation for approximately 20 to 30 seconds, at which point he began filming the incident on his phone. The 11-second video was played for the jury. After Hornsby walked away, Morris called the police to report the incident.

Santa Monica Police Officers Justin Buonarati and Christian Goretti were on patrol on October 11 when they received a radio call regarding a robbery that had taken place a block from their location. Both officers were in uniform and were traveling in a marked police vehicle. As they approached the area of the sunglasses store, Officer Buonarati saw Hornsby, who matched the description of the robbery suspect. Officer Buonarati got out of the car and told Hornsby to "stop and get on the ground." Officer Buonarati testified that Hornsby did not stop, and Officer Buonarati repeated the command at least one

more time.[1]  Hornsby continued walking and said, "Fuck you."  As Hornsby passed him, Officer Buonarati "grabbed [Hornsby's] right arm with [his] right arm and grabbed the back of [Hornsby's] neck with [his left arm]."  Officer Buonarati "did a light sweep to get [Hornsby] to the ground."  Hornsby tried to push himself up while Officer Goretti grabbed Hornsby's left arm.  Hornsby continued struggling and kicking while the officers handcuffed him.  The officers recovered the stolen sunglasses from Hornsby's backpack.  Officer Goretti searched Hornsby and found a stun gun in Hornsby's front pants pocket.

Hornsby stipulated that he had suffered a conviction in 2002 for felony assault with a deadly weapon.  Hornsby did not present evidence in his defense.

B.    *The Verdict and Sentencing*

The jury found Hornsby guilty of second degree robbery (Pen. Code, § 211),[2] possessing a stun gun after a prior felony conviction (§ 22610, subd. (a)), and resisting a peace officer (§ 148, subd. (a)(1)).[3]  The trial court sentenced Hornsby to a state prison term of six years for second degree robbery, consisting of the middle term of three years, doubled under the three strikes law (§§ 667, subds. (b)-(i), 1170.12).  The court imposed concurrent terms of 180 days for possession of a stun

---

[1]    Officer Goretti testified he heard Buonarati tell Hornsby to stop "approximately one time."

[2]    Further statutory references are to the Penal Code.

[3]    The jury found Hornsby not guilty of carrying a dirk or dagger in violation of section 21310.

gun and 364 days for resisting a peace officer.  Hornsby timely
appealed.

## DISCUSSION

A.  *The Trial Court Did Not Err in Not Instructing the Jury on
    Theft*

1.  *Governing law and standard of review*

A trial court in a criminal case has a duty to instruct on
general principles of law applicable to the case that are """"closely
and openly connected with the facts before the court, and which
are necessary for the jury's understanding of the case.""""  (*People
v. Valdez* (2004) 32 Cal.4th 73, 115; accord, *People v. Young*
(2005) 34 Cal.4th 1149, 1200.)  This includes a duty to instruct
the jury sua sponte on all lesser included offenses if there is
substantial evidence from which a jury can reasonably conclude
the defendant committed the lesser, uncharged offense, but not
the greater offense.  (*People v. Smith* (2018) 4 Cal.5th 1134, 1163;
*People v. Whalen* (2013) 56 Cal.4th 1, 68.)  This instructional
requirement "'prevents either party, whether by design or
inadvertence, from forcing an all-or-nothing choice between
conviction of the stated offense on the one hand, or complete
acquittal on the other.  Hence, the rule encourages a verdict,
within the charge chosen by the prosecution, that is neither
"harsher [n]or more lenient than the evidence merits."'"  (*People
v. Smith* (2013) 57 Cal.4th 232, 239-240; accord, *People v. Banks*
(2014) 59 Cal.4th 1113, 1159-1160.)

Substantial evidence in this context is evidence """"sufficient
'to deserve consideration by the jury,' not 'whenever *any* evidence
is presented, no matter how weak.'"""  (*People v. Wilson* (2005)

5

36 Cal.4th 309, 331.) An instruction is not required where only "[s]peculative, minimal, or insubstantial evidence" supports the instruction. (*People v. Simon* (2016) 1 Cal.5th 98, 132, 134.) In deciding whether to give a defense instruction, the court must "view the evidence in the light most favorable to the defendant." (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

We review a defendant's claims of instructional error de novo. (*People v. Simon, supra*, 1 Cal.5th at p. 133 [failure to instruct on lesser included offense]; *People v. Posey* (2004) 32 Cal.4th 193, 218.)

2.  *Theft as a lesser included offense of robbery*

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211; see *People v. Williams* (2013) 57 Cal.4th 776, 781, 786.) A taking for purposes of robbery is "either the gaining possession or the carrying away" of property. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8.) "'[T]he crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.'" (*People v. Anderson* (2011) 51 Cal.4th 989, 994 (*Anderson*).)

"'The terms "force" and "fear" as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors.'" (*People v. Griffin* (2004) 33 Cal.4th 1015, 1025-1026.) Something more is required than the quantum of force necessary to accomplish the mere seizing of the property (*Anderson*, *supra*, 51 Cal.4th at p. 995; *People v. Burns* (2009) 172 Cal.App.4th 1251, 1259), but only such force as is necessary to overcome the

victim's resistance.  (See *Burns*, at p. 1259; *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1708 [proper inquiry is whether "defendant engage[d] in a measure of force at the time of taking to overcome the victim's resistance"]; see also *Griffin*, at p. 1025 [the degree of force used, if not merely incidental, is immaterial].)

Theft, defined in section 484 as the felonious stealing, taking, carrying, leading or driving away the personal property of another, is a lesser included offense of robbery.  (*People v. Whalen, supra*, 56 Cal.4th at p. 69; *People v. DePriest* (2007) 42 Cal.4th 1, 50.)  "The crime [of robbery] is essentially a theft with two aggravating factors, that is, a taking (1) from [the] victim's person or immediate presence, and (2) accomplished by the use of force or fear."  (*Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 221; accord, *DePriest*, at p. 50.)

3.     *Substantial evidence did not support an instruction on theft*

The evidence at trial established that Thein and Hornsby engaged in a physical struggle when Hornsby tried to leave the sunglasses shop with the sunglasses in his backpack.  Both Thein and Morris testified that Hornsby pushed Thein, and Morris saw Hornsby choke Thein.  Morris said the physical altercation lasted approximately 30 seconds.  In addition, the jury viewed the 11-second video depicting the confrontation.  Based on this evidence, there was no basis upon which a jury could conclude Hornsby took the sunglasses without the use of force unless the jury rejected the uncontradicted evidence presented by the prosecution.  The possibility that a jury might reject the prosecution's evidence does not establish substantial evidence to support an instruction on a lesser included offense.  (See *People v.*

7

*Friend* (2009) 47 Cal.4th 1, 51 [lesser included offense instruction not warranted where "there was no reason why the jury would have rejected the prosecution's evidence that defendant committed a robbery"]; *People v. Abilez* (2007) 41 Cal.4th 472, 514 ["'if there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged, such instructions [on lesser included offenses] shall not be given'"].)

Hornsby argues that despite the physical altercation at the door of the store, there was substantial evidence he "intended to shoplift, but did not intend to use force or fear such that he would commit a robbery and only used 'force' in response to Thein's unexplained actions in locking the door on him."[4] This argument misapprehends the applicable law. As discussed, robbery is an ongoing crime that continues until the robber reaches a place of safety. (*Anderson, supra*, 51 Cal.4th at p. 994.) A defendant may "conceive[] the intent to steal either before or during the commission of the act of force against the victim." (*People v. Jackson* (2016) 1 Cal.5th 269, 343.) Accordingly, a robbery occurs "where the perpetrator peacefully acquires the victim's property, but then uses force to retain or escape with it." (*Miller v. Superior Court, supra*, 115 Cal.App.4th at p. 222; see *People v.*

---

[4]     Hornsby also argues the jury could have found he had no intent to steal the sunglasses and merely placed them in his bag "as a way of holding them while he continued shopping and [had] not realized that his actions could be construed as a prelude to shoplifting." This inference is not only unreasonable, but was rejected by the jury; had the jury believed Hornsby had no intent to steal the sunglasses, it could not have found him guilty of robbery.

8

*Phillips* (1962) 201 Cal.App.2d 383, 385 ["escape of the robber with the loot is a part of the robbery itself"].)

Here, even if Hornsby initially intended to commit only theft, once he used force to flee and to physically resist Thein's attempts to retain the sunglasses, the theft was converted into a robbery. (See *People v. Gomez* (2008) 43 Cal.4th 249, 253, 265 [sufficient evidence of robbery where defendant peacefully stole property but shot at victim while driving away]; *People v. Mendez-Torres* (2025) 113 Cal.App.5th 1007, 1016 [use of force in response to a "'a victim's physical resistance will convert a theft into a robbery'"].) In order to have convicted Hornsby of theft (and not robbery), the jury would need to have concluded Hornsby used *no* force in taking the sunglasses *and* no force in getting away. The evidence is to the contrary.[5]

B.   *The Trial Court Did Not Err in Instructing the Jury on Possession of a Stun Gun*

1.   *Governing law and standard of review*

When instructions are alleged to be ambiguous or conflicting, we "'review[ ] the wording of a jury instruction de novo and assesses whether the instruction accurately states the law.'" (*People v. Lewis* (2023) 14 Cal.5th 876, 900 (*Lewis*).) "'The challenged instruction is viewed "in the context of the

---

[5]   Hornsby's argument that the jury was "troubled as to whether [he] even used force" is unavailing. During deliberations the jury submitted a question asking for "the definition of 'force' and what the threshold is to consider an action 'forceful.'" The jury's request for clarification on the use of force does not show the jury was "troubled" about that issue or believed that no force was used.

9

instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.'"'" (*Ibid*.; accord, *People v. Mitchell* (2019) 7 Cal.5th 561, 579.) "[W]e must . . . not judge a single jury instruction in artificial isolation out of the context of the charge and the entire trial record. [Citations.] When a claim is made that instructions are deficient, we must determine whether their meaning was objectionable as communicated to the jury. If the meaning of instructions as communicated to the jury was unobjectionable, the instructions cannot be deemed erroneous." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 276; accord, *Lewis* at p. 900.)

"When instructions are claimed to be conflicting or ambiguous, 'we inquire whether the jury was "reasonably likely" to have construed them in a manner that violates the defendant's rights.' [Citation.] . . . We assume that the jurors are ""intelligent persons and capable of understanding *and correlating* all jury instructions . . . given."'"' (*People v. Franco* (2009) 180 Cal.App.4th 713, 720; accord, *People v. Covarrubias* (2016) 1 Cal.5th 838, 906 (*Covarrubias*) ["we inquire whether there is a reasonable likelihood that the jury misunderstood or misapplied the instruction"]; *People v. Rogers* (2006) 39 Cal.4th 826, 873.)

> 2.  *There is no reasonable likelihood the jury*
>     *misunderstood the law based on the modified*
>     *CALCRIM No. 252 instruction*

Hornsby contends the trial court's instruction with CALCRIM No. 252 allowed the jury to improperly convict him of possession of a stun gun without a finding he had knowledge the

10

object was a weapon, which was a required element to prove unlawful possession of a stun gun under section 22610, subdivision (a). This contention lacks merit.

Section 22610, subdivision (a), states: "No person convicted of a felony or any crime involving an assault . . . shall purchase, possess, or use any stun gun." Because the statute does not specify an intent requirement, it is considered a general intent crime. (*People v. Rubalcava* (2000) 23 Cal.4th 322, 328 ["'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent.'"].) However, the Supreme Court has clarified that crimes for unlawful possession of a weapon have a knowledge requirement where the law criminalizes otherwise lawful conduct. (*Id.* at p. 332.) In *Rubalcava*, for example, the court stated that to find a defendant guilty of the unlawful carrying of a concealed dirk or dagger under former section 12020, subdivision (a), "the defendant must knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.' [Citation.] A defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a . . . weapon is therefore not guilty of violating" the unlawful possession statute. (*Rubalcava*, at p. 332.)

The trial court properly instructed the jury on the elements of unlawful possession of a stun gun with a modified version of CALCRIM No. 2500 as follows: "The defendant is charged in Count 3 with unlawfully possessing a weapon, specifically a stun gun in violation of Penal Code section 22610(a). [¶] To prove

11

that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a stun gun; [¶] 2. The defendant knew that he possessed the stun gun; [¶] 3. The defendant was previously convicted of a felony; [¶] AND [¶] 4. The defendant knew that the object was a weapon. [¶] The People do not have to prove that the defendant intended to use the object as a weapon."

Because Hornsby was charged both with specific intent offenses (robbery and resisting arrest) and general intent offenses (possession of a stun gun and possession of a dirk or dagger), the trial court properly instructed the jury with CALCRIM No. 252, which explains the union of act and intent for both specific and general intent crimes. The modified version of CALCRIM No. 252 given to the jury stated in the first paragraph: "The crimes charged in Counts 1-4 require[] proof of the union, or joint operation, of act and wrongful intent." The instruction continued in the second paragraph: "The following crimes require general criminal intent: PC 21310, as charged in Count 2 and PC 22610(a), as charged in Count 3. For you to find a person guilty of these crimes, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

The court then instructed the jury with the third paragraph of CALCRIM No. 252: "The following crimes require[] a specific intent or mental state: PC 211, as charged in Count 1 and PC 148(a)(l) as charged in Count 4. For you to find a person guilty of these crimes, that person must not only intentionally

12

commit the prohibited act, but must do so with a specific intent. The act and the specific intent required are explained in the instruction for that crime."

Hornsby argues the trial court's inclusion of possession of a stun gun in the second paragraph of CALCRIM No. 252 regarding general intent crimes was error because the jurors would have believed they could convict him of possession of a stun gun based solely on a finding he acted with wrongful intent, without finding he had the required knowledge that the stun gun was a weapon. In support of this argument Hornsby relies on the bench notes for CALCRIM No. 252, which state "[i]f the crime requires a specific mental state, such as knowledge or malice, the court **must** insert the name of the offense in the third paragraph [regarding specific intent], explaining the mental state requirement, even if the crime is classified as a general intent offense." (Bench notes to CALCRIM No. 252.) The third paragraph of the CALCRIM No. 252 pattern instruction provides additional language "as needed": "The specific [mental state] required for the crime of _____ is _____."

Hornsby is correct that the trial court did not instruct the jury in strict compliance with the bench notes to CALCRIM No. 252 because the court listed possession of a stun gun as a general intent crime without instructing with the additional language that conviction of the crime required a specific mental state (knowledge the stun gun was a weapon). It would have been a better practice for the trial court to have included this language in the third paragraph. However, the bench notes are not binding authority. (See *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7 ["we caution that jury instructions, whether published or not, are not themselves the law, and are

13

not authority to establish legal propositions or precedent"]; *People v. Garcia* (2020) 46 Cal.App.5th 123, 155, fn. 32 ["bench notes are not authority for legal principles"].)

Moreover, in the context of the instructions as a whole, there is no reasonable likelihood the jury was misled by the court's inclusion of possession of a stun gun in the second paragraph of CALCRIM No. 252 regarding general intent rather than in the third paragraph on mental state. (See *Lewis, supra,* 14 Cal.5th at p. 900.) The jury was instructed in the second paragraph with respect to the general intent crimes that the "act required is explained in the instruction for that crime." The court's instruction on CALCRIM No. 2500 made clear that to find Hornsby guilty of possession of a stun gun, the jury had to find Hornsby "knew that the object was a weapon." In order to find Hornsby guilty of possession based on general intent alone, the jury would have needed to ignore the court's instruction on the knowledge requirement. "'[W]e of course presume "that jurors understand and follow the court's instructions."'" (*People v. Edwards* (2013) 57 Cal.4th 658, 746; accord, *People v. Anderson* (2018) 5 Cal.5th 372, 419 ["'[a]bsent a contrary indication in the record, it must be assumed the jury followed [the court's instruction]'"].) Nothing in the record supports a finding the jury did not follow understand and follow the court's instructions.

*People v. Castillo* (1997) 16 Cal.4th 1009 is directly on point. In *Castillo*, the trial court instructed the jury with CALJIC No. 4.21 that voluntary intoxication could negate specific intent to kill with respect to the murder and attempted murder counts but failed to state voluntary intoxication could negate the mental states of premeditation and deliberation. (*Id.* at p. 1016.) The Supreme Court held the instruction "was correct although,

14

by itself, it would not have been complete. . . .  Although the trial court might have adapted the first paragraph of CALJIC No. 4.21 to refer to both the specific intent necessary for murder and the additional mental state necessary for first degree murder, its failure to do so did not mislead the jury in light of the rest of the instructions." (*Id*. at p. 1017.)

Hornsby urges us to follow *People v. Southard* (2021) 62 Cal.App.5th 424, in which the Court of Appeal concluded the failure to include in CALCRIM No. 250 (on general intent crimes) the required mental state was error because it instructed the jury that it "could convict defendant on all counts *solely* if it found 'he intentionally [did] a prohibited act; however it is not required that [he] intended to breach the law.'" (*Id*. at pp. 666-667, italics added.)  *Southard* is distinguishable.  In *Southard*, the defendant was charged with resisting a police officer and possession of methamphetamine, both general intent crimes that contain a knowledge requirement.  (*Id*. at p. 437.)  The Court of Appeal concluded the general intent instruction and instructions on the specific offenses were "contradictory," noting the trial court had disregarded the "express boldface warning in the Bench Notes." (*Ibid*.)  It is not clear from the opinion why the court read CALCRIM No. 250 to mean the jury could convict the defendant of the offenses "solely" if he intentionally committed the acts, i.e., without having the necessary knowledge.  As discussed, in this case nothing in the court's instruction with CACLRIM No. 252 contradicts the court's instruction with CALCRIM No. 2500 on the elements of the offense.  And, as discussed, the failure to instruct a jury in conformance with the bench notes is not error in the absence of conflicting or confusing instructions.

C.  *The Trial Court Did Not Err in Instructing the Jury on Resisting a Peace Officer*

   1.  *Substantial evidence did not support an instruction on excessive force*

Hornsby argues the trial court erred by not instructing the jury with portions of CALCRIM Nos. 2656 and 2670 on the use of excessive force.  The court instructed the jury with a modified version of CALCRIM No. 2656, stating:  "The defendant is charged in Count 4 with resisting a peace officer in the performance or attempted performance of his duties in violation of Penal Code section 148(a).  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1. Officer Buonarati was a peace officer lawfully performing or attempting to perform his duties as a peace officer; [¶] 2. The defendant willfully resisted Officer Buonarati in the performance or attempted performance of those duties; [¶] AND [¶] 3. When the defendant acted, he knew, or reasonably should have known, that Officer Buonarati was a peace officer performing or attempting to perform his duties."  (Italics omitted.)

Hornsby argues the trial court erred in failing to instruct the jury with the bracketed portion of the CALCRIM No. 2656 pattern instruction (to be given when lawful performance is an issue), which states, "A peace officer is not lawfully performing his or her duties if he or she is (unlawfully arresting or detaining someone/ [or] using unreasonable or excessive force in his or her duties)."  Hornsby likewise argues the court should have instructed the jury with CALCRIM No. 2670 on the use of excessive force, which states, "A peace officer is not lawfully performing his or her duties if he or she is . . . using unreasonable

16

or excessive force when making or attempting to make an otherwise lawful arrest or detention."

As discussed, a trial court has a sua sponte duty to instruct on general principles of law applicable to the case, which includes a duty to instruct on a particular defense "if it appears that the defendant was relying on the defense, or that there was substantial evidence supportive of the defense, and the defense was not inconsistent with the defendant's theory of the case." (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) Use of excessive force by a peace officer is a "defense[] available to a charge of violating section 148 (resisting, delaying or obstructing a police officer in the performance of his duty)" because "excessive force by a police officer renders unlawful an otherwise lawful arrest in that excessive force is not within the performance of the officer's duty." (*People v. Olguin* (1981) 119 Cal.App.3d 39, 44.)

The evidence in this case did not support an instruction on excessive use of force. Officer Buonarati testified he told Hornsby to "stop and get on the ground," but Hornsby kept walking. Officer Buonarati then grabbed Hornsby and executed a leg sweep to get Hornsby to the ground. Hornsby struggled while the two officers handcuffed him. Hornsby did not argue at trial that this use of force was excessive for apprehending a robbery suspect. In his closing argument, Hornsby's counsel did not claim Hornsby was resisting an excessive use of force by the police officers, and instead argued the encounter happened so quickly that Hornsby's behavior could not be construed as resistance.[6]

---

[6]    In his closing argument, Hornsby's counsel stated, "The cops say one time, 'Get on the ground.' . . . And then less than 10 seconds later he grabs Mr. Hornsby by the neck, by the arm and leg sweep and takes him down to the ground in less than

17

On this record there was not substantial evidence to support a finding by the jury of excessive force.

> 2. *The trial court did not abuse its discretion in responding to the jury's question*

After it began deliberating, the jury sent a note to the trial court stating, "Does the [officer] have to state the reason for stopping or detaining a person <u>at</u> the time or prior to the time they attempted to stop or detain the individual in order to make it lawful?" The court read the note to counsel for the parties and informed them it intended to refer the jury to the instruction for resisting a peace officer (CALCRIM No. 2656). Neither the prosecutor nor defense counsel objected. Accordingly, the trial court responded to the jury's note by writing, "Please refer to jury instruction #2646 and look at the elements."

Section 1138 provides, "After the jury have retired for deliberation . . . if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." The Supreme Court has explained, "The

---

10 seconds. 'You have 10 seconds to listen to me or I'm taking you to the ground.' And that's resisting? Mr. Hornsby is on the ground having been tackled. He still doesn't know why he's being arrested. The officers still haven't told him. He is on his side on his arm and trying to get his arm out, and that took that as resisting and struggling. Is it? Or is it because: 'Hey, I'm on my arm and another 200 pounds is on top of me. Can I please get it out?'"

court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97; accord, *People v. Cleveland* (2004) 32 Cal.4th 704, 755; see *People v. Smithey* (1999) 20 Cal.4th 936, 984-985 [a trial court may satisfy its duty to respond to the jury's question by referring it to instructions already given if those instructions are full and complete and adequately answer the jury's question on the facts of the case].)

We review the trial court's responses to the deliberating jury's questions for abuse of discretion. (See *People v. Waidla* (2000) 22 Cal.4th 690, 745-746 ["[a]n appellate court applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury"]; *People v. Fleming* (2018) 27 Cal.App.5th 754, 765 [same].)

Hornsby argues that when the jury asked for further guidance regarding a peace officer's lawful performance of his duties, the court prejudicially erred by not instructing on excessive force with the omitted portions of CALCRIM No. 2656 and CALCRIM No. 2670. However, nothing about the jury's question, which focused on an officer's duty to state the reason for the detention, related to excessive force or suggested the jury was confused as to how excessive force would impact the lawfulness of the officer's actions. And, as discussed, there was no evidence to

19

support instructions on excessive force. Accordingly, the trial court did not abuse its discretion by referring the jury to the instructions as given.

     3.    *The trial court did not err in failing to give a unanimity instruction*

"[T]he Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction" in federal or state court. (*Ramos v. Louisiana* (2020) 590 U.S. 83, 93; accord, *Covarrubias, supra*, 1 Cal.5th at p. 877 ["In a criminal case, 'the jury must agree unanimously the defendant is guilty of a *specific* crime.'"].) "A unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count." (*People v. Grimes* (2016) 1 Cal.5th 698, 727; accord, *People v. Russo* (2001) 25 Cal.4th 1124, 1132 ["when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act"].)

"This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.] . . . 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.'" (*People v. Russo, supra*, 25 Cal.4th at p. 1132.) "'In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk

20

the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime.  In the first situation, but not the second, it should give the unanimity instruction.'" (*Covarrubias, supra*, 1 Cal.5th at p. 878; accord, *Russo*, at p. 1135.)

The trial court must give a unanimity instruction even absent a request ""'where the circumstances of the case so dictate.'"" (*Covarrubias, supra*, 1 Cal.5th at p. 877; accord, *People v. Riel* (2000) 22 Cal.4th 1153, 1199.)  We review de novo whether the trial court erred in failing to give a unanimity instruction. (*People v. Sorden* (2021) 65 Cal.App.5th 582, 616 [reviewing de novo whether "trial court erred in failing, sua sponte, to give a unanimity instruction"]; *People v. Selivanov* (2016) 5 Cal.App.5th 726, 751 [same].)

"[N]o unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time.'" (*People v. Jennings* (2010) 50 Cal.4th 616, 679; accord, *People v. Sorden, supra*, 65 Cal.App.5th at p. 616; *People v. Jo* (2017) 15 Cal.App.5th 1128, 1178.)  In addition, "a unanimity instruction is not required if 'the defendant offered the same defense to both acts constituting the charged crime, so no juror could have believed defendant committed one act but disbelieved that he committed the other, or because "'there was no evidence from which the jury could have found defendant was guilty of'"

21

the crime based on one act but not the other.'" (*Covarrubias, supra*, 1 Cal.5th at p. 879; accord, *Jennings*, at p. 679.)

Hornsby contends the trial court erred in not instructing with a unanimity instruction because the jury could have found he resisted the police officers either by refusing to stop when ordered to do so *or* by struggling and kicking them once he was on the ground. The evidence did not require a unanimity instruction. Officer Goretti testified it was less than 10 seconds between the time the officers saw Hornsby and when Officer Buonarati brought Hornsby to the ground. Given that Hornsby's refusal to stop and the physical struggle occurred within a matter of seconds, the entire encounter constituted a continuous course of conduct. (See *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1533 [the defendant's struggle with several officers within a short period of time constituted a continuous course of conduct not requiring unanimity instruction]; *People v. Haynes* (1998) 61 Cal.App.4th 1282, 1296 [no unanimity instruction required for robbery charge where "[t]he two encounters were just minutes and blocks apart and involved the same property"].)[7]

---

[7] Hornsby argues he was denied a fair trial due to the cumulative errors with respect to the jury instructions for resisting a peace officer. Because we reject the individual claims of error, there is no cumulative error. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1020 ["'Because we have found no error, there is no cumulative prejudice to evaluate.'"]; *People v. Lopez* (2018) 5 Cal.5th 339, 371 [same].)

## DISPOSITION

The judgment of conviction is affirmed.


                                        FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.